# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

REGINALD C. HAUPT, JR.    )
                              )
      Petitioner,        )
                              )
v.                          )      Case No. CV408-179
                              )
TAMALA BROWN, Warden,    )
                              )
      Respondent.      )

## REPORT AND RECOMMENDATION

A Georgia state court jury convicted Reginald C. ("Bubba") Haupt of two counts of making an untrue statement of material fact in connection with an offer for the sale of securities and five counts of omission of a material fact in connection with such an offer to sell in violation of the Georgia Securities Act of 1973 (the "Act"), O.C.G.A. § 10-5-12(a)(1) and (2)(B), respectively. After unsuccessfully appealing to the Georgia Court of Appeals, *Haupt v. State*, 290 Ga. App. 616 (2008), Haupt sought no state habeas relief but instead petitioned this Court for federal habeas relief under 28 U.S.C. § 2254. Doc. 1.

# I.   BACKGROUND

The following facts are taken directly from the Georgia Court of
Appeals' opinion:

> [H]aupt, once a Savannah attorney, was disbarred in October 1983
> for commingling client funds with his own, failing to account for
> the same, and other violations of the Georgia Bar Rules. *In the
> Matter of Haupt*, 251 Ga. 510, 511, 307 S.E.2d 488 (1983). He had
> been suspended from the practice of law for six months with a
> public reprimand for the same offense a year earlier. *In the Matter
> of Haupt*, 250 Ga. 422, 423, 297 S.E.2d 284 (1982). In 1985, Haupt
> was convicted of four counts of felony conversion and sentenced
> concurrently to eight years confinement, to serve two, and the
> remainder probated. After his release from confinement in 1987,
> Haupt was convicted in Florida of grand theft in the first degree
> and sentenced to five years probation. In 1992, apparently after
> successfully completing his sentences to probation, he was
> unconditionally pardoned for his Georgia convictions, "without
> implying innocence," by the State Board of Pardons and Paroles.
> Haupt thereafter filed a petition for reinstatement as a member of
> the State Bar, but such petition was dismissed by the Supreme
> Court of Georgia upon the motion of the State Bar.
>
> In the fall of 2001, Haupt decided to open a restaurant chain in his
> own right to be known as Crabdaddy's and to be operated by a
> corporation to be known as Crabdaddy's, Inc. ("Crabdaddy's" or the
> "new corporation"). To do so, he persuaded Karen Thompson,
> Thomas Richardson, Don Hodges, Marie Rodriguez and her
> mother, Enedina Rissman, to invest in the new corporation.
>
> The conversations between Haupt and Thompson took place at
> Bell's Restaurant in Chatham County in late 2001. After learning
> that Thompson was a widow in financial trouble, Haupt told
> Thompson that he was an attorney taking only occasional cases in
> favor of making more money in the restaurant business; that a
> $10,000 investment was required to acquire 50 shares of

Crabdaddy's stock, although he gave an equal number of shares in the new corporation to at least one individual for services rendered and sold an equal number of shares to another for $15,000; and that Crabdaddy's had been incorporated when it had not. Haupt failed to disclose that he had been disbarred; that his petition for reinstatement had been dismissed; that neither he nor Crabdaddy's was registered with the Georgia Secretary of State to sell stock in Georgia; and that the Crabdaddy's stock he was selling was unregistered. Thompson purchased 50 shares of Crabdaddy's stock for $10,000 in late 2001.

Haupt approached Richardson in February 2002 at his Chatham County business office seeking a further investment in Crabdaddy's. Haupt told Richardson that 50 shares in the new corporation would cost $15,000, but failed to tell him that the other investors in Crabdaddy's were receiving the same number of shares for $10,000. Further, while Haupt told Richardson that he had been disbarred, he failed to inform him that his petition for reinstatement had been dismissed and that he was a convicted felon. Richardson purchased 50 shares of Crabdaddy's "Corporate Capital" stock for $15,000 in February 2002.

In January 2002, Haupt approached Don Hodges "within the Chatham County area" and asked if he would like to receive stock in Crabdaddy's in lieu of payment completed on a Crabdaddy's restaurant in the City of Richmond Hill in Bryan County. Hodges knew of Haupt's disbarment and that he served time in Georgia for felony theft at that time. Haupt, however, failed to inform Hodges that he had been convicted of grand theft in Florida and that he was offering stock in a corporation that had not been incorporated and for which he was not a registered agent. Hodges purchased 50 shares of Crabdaddy's "Corporate Capital" stock for $10,000 in January 2002.

Rodriguez and Rissman each purchased $10,000 shares of Crabdaddy's "corporate" stock on May 21, 2002 upon representations Haupt made to them at the Tybee Island Crabdaddy's restaurant in Chatham County. Haupt falsely led them

to believe that Crabdaddy's had repurchased stock sold to earlier investors, thereby making such shares available for purchase. Haupt failed to tell them that there had been no repurchases of stock, that he and the earlier investors were in an active dispute over his ownership of Crabdaddy's stock, that such stock was not registered for sale, and that he was not registered to sell securities in Georgia. Further, Haupt failed to disclose to Rodriguez and Rissman that he was a disbarred attorney and a convicted felon.

*Haupt*, 290 Ga. App. at 617-619.

On direct appeal Haupt challenged the sufficiency of the indictment to allege securities fraud, along with the Act's applicability to the "investment contracts" at issue. He also faulted the trial court's charge to the jury, the trial court's jurisdiction for lack of venue in Chatham County, Georgia, the admission of certain evidence, the sufficiency of the evidence, and the denial of his motion for new trial based upon newly discovered evidence. The appeals court rejected all of these claims. *Id*. at 616. Haupt then filed his § 2254 federal habeas petition in this Court.

## II. <u>STANDARD OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") placed "a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court."

*Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bell v. Cone*, 535 U.S. 685, 693 (2002) (AEDPA was intended "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."); *see Peterka v. McNeil*, 532 F.3d 1199, 1200-01 (11th Cir. 2008) (under AEDPA a federal court's review of a state court ruling is "greatly circumscribed and highly deferential to the state courts") (citation omitted); *Trotter v. Sec'y, Dep't of Corr.*, 535 F.3d 1286, 1290 (11th Cir. 2008) (AEDPA limits a federal court's review of a state court's decisions "and establishes a general framework of substantial deference for reviewing every issue that the state courts have decided.") (citations omitted).  These restrictions on federal habeas review are set forth in 28 U.S.C. § 2254(d), which provides that a federal court may grant a writ of habeas corpus for a claim adjudicated on the merits in state court only if the state court adjudication

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Carroll v. Secretary, DOC, FL Atty. Gen.*, ___

F.3d ___, 2009 WL 2092309 at * 9 (11th Cir. July 17, 2009).

The "threshold question" under § 2254(d)(1) is whether the habeas petitioner is seeking to apply a rule of law that was clearly established at the time his state court conviction became final. *Williams*, 529 U.S. at 390. Since the statute expressly provides that only pronouncements "by the Supreme Court of the United States" qualify as "clearly established Federal law," 28 U.S.C. § 2254(d)(1), a federal habeas court may not look to the "the case law of the lower federal courts" in determining what federal law is "clearly established." *Putnam v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). Further, the statute "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. These "holdings -- the exclusive touchstone for clearly established federal law -- must be construed narrowly and consist only of something akin to on-point holdings." *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008). Unless a prior Supreme Court decision "squarely addresses" the issue presented in the habeas case, *Wright v. Van Patten*, 552 U.S. 120, 128 S. Ct. 743, 746 (2008), or establishes a legal principle that "clearly extend[s]" to the conduct at issue in that case, then it cannot be said that

the law is clearly established under AEDPA. *Id.* at 745; *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009) ("this Court has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."); *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009). Thus, "federal courts may no longer extract clearly established law from the general legal principles developed in factually distinct contexts." *House*, 527 F.3d at 1017. If the federal habeas court makes a threshold determination that the law was not clearly established at the time the state court issued its decision, then that finding is dispositive in the § 2254(d)(1) analysis, and there is no need for the Court to assess whether the state court's decision conflicts with controlling United States Supreme Court authority *Id.*

But where the Supreme Court has decided the issue addressed by the state court, the federal habeas court must determine whether the state court's decision is "contrary to" or involves an "unreasonable application" of the controlling precedent. These § 2254(d)(1) clauses have independent meaning and furnish separate bases for reviewing a state court's decisions. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at

404-05; *Putnam*, 268 F.3d at 1241 (11th Cir. 2001).

A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13. In contrast, a state court decision involves an "unreasonable application" of clearly established federal law where it correctly identifies the governing legal rule from the Supreme Court's cases but applies it unreasonably to the facts of the particular prisoner's case. *Id.* at 407-08, 413. Thus, "[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, the state court's application of Supreme Court precedent must be "objectively unreasonable." *Id.* at 409; *Bell*, 535 U.S. at 694; *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001). That presents "a substantially higher threshold" than the pre-AEDPA standard. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal courts also must presume state court factual findings to be

correct unless they are rebutted by the petitioner "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This statutory presumption of correctness applies to findings of fact made by both state trial and appellate courts. *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007). Such deference does not apply, however, to mixed determinations of law and fact. *Parker*, 244 F.3d at 836.

Finally, a state court's decision rejecting a constitutional claim on the merits is entitled to deference even if the decision is summary in nature and offers no discussion of the court's reasoning. *Wright v. Moore*, 278 F.3d 1245, 1253-54 (11th Cir. 2002) (two-sentence opinion affirming defendant's conviction constituted a rejection of his claim on the merits so as to warrant deference); *Parker*, 331 F.3d at 776 ("the summary nature of [the] decision does not lessen the deference that it is due").

## III. <u>ANALYSIS</u>

### A. "What is a Security?"

In "Ground One" of his petition Haupt attacks the sufficiency of both the indictment and the evidence against him. Doc. 11 at 12-17. He argues that Georgia's definition of a "security" is the same as the federal

definition, and that the evidence against him never came close to showing that he engaged in the sale of a security. Therefore, any false statements that he has been shown to have made are irrelevant as the elements of an offence under O.C.G.A. § 10-5-12(a)(1) and (2)(B) require false statements *plus* the sale of a security. Since he never sold a security, the State convicted him of no crime, and thus under *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), no rational trier of fact could have found the essential elements of his crime beyond a reasonable doubt. Doc. 1 at 12-17; doc. 2 at 4-15; doc. 13.

Haupt raised this issue before the Georgia court of appeals, but that court determined that Haupt's claim was "waived on appeal because he failed to preserve the issue by moving for a directed verdict of acquittal thereon." *Haupt,* 290 Ga. App. at 619; 660 S.E.2d at 387. Respondent urges this Court to respect the State appellate court's finding of procedural default. Doc. 8 at 3.[1]

---

[1] On the very next page of its brief, respondent characterizes Haupt's arguments in his federal habeas petition as "new claims" that, though technically unexhausted, should be found by this Court to be procedurally defaulted under Georgia law, for it is clear the state court would so find if the question were before it. Doc. 8 at 4. It is true that a federal court faced with an unexhausted claim "can forego the needless judicial ping-pong" of returning that claim to the state court if it is obvious the unexhausted claim would be considered procedurally defaulted by the state court. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998); *see Ogle v. Johnson*, 488 F.3d 1364, 1370 (11th Cir. 2007); *Kelley v. Sec'y for Dep't of Corrs.*, 377 F.3d 1317, 1351 (11th Cir. 2004); *see also Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982). But as the state

The authority of federal courts to review a state criminal conviction is strictly constrained when a petitioner procedurally defaulted on his claim by failing to follow applicable state procedural rules. *Sims*, 155 F.3d at 1311; *Johnson*, 938 F.2d at 1173. "A federal court must dismiss those claims or portions of claims that are procedurally barred under state law." *Sims*, 155 F.3d at 1311. As the Supreme Court has explained, where

> a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Further, where ineffective assistance of counsel is asserted as cause for a procedural

---

initially (and correctly) points out, Haupt *did* raise his claims on direct appeal, and the appellate court specifically declined to review those claims on procedural grounds. As Haput is not asserting a "new," unexhausted claim here, there is no need for this Court to apply a state procedural bar rule for the state court, as the state court has already determined that Haput's claim is procedurally barred. It is well settled that a federal court must ordinarily respect a state court's application of its procedural default rules. *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999); *Sims v. Singletary*, 155 F.3d 1297, 1311 (11th Cir. 1998).

It appears that the state's brief is a patchwork quilt of arguments and case law citations lifted from other briefs, some of which are internally inconsistent and inapplicable on these facts. In the future, the state's attorney should refrain from cobbling together canned arguments that have absolutely nothing to do with the case before this Court.

default, the prisoner must present this ground as an independent claim to the state courts "'before it may be used to establish cause for procedural default.'" *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Henderson v. Campbell*, 353 F.3d 880, 896-97 (11th Cir. 2003).[2]

When Haupt moved for a directed verdict at trial he argued only that the evidence was insufficient regarding the *falsity* of his representations to the victims. Doc. 12-5 at 56-71.[3] He did *not* then raise the issue that he raises here: that "the investment agreements presented in this case were [not] securities within the definition of a security under the provisions of the Georgia Securities Act." Doc. 13 at 6. On direct appeal, where he did raise the issue, the state appellate court denied the claim on procedural grounds:

> Haupt's claim that the investment contracts by which he sold Crabdaddy's stock to his victims were not "securities" under the Act is also waived on appeal because he failed to preserve the issue *by moving for a directed verdict of acquittal thereon. See Rhyne v.*

---

[2] And under Georgia law, a claim of ineffective assistance of trial counsel is waived when a defendant's newly-appointed counsel fails to assert it on direct appeal. *White v. Kelso*, 261 Ga. 32, 401 S.E.2d 733 (1991) ("new counsel must raise the ineffectiveness of prior counsel at the first possible stage of post-conviction review.").

[3] The state court records from Haupt's case have been scanned into this Court's "CM/ECF" electronic docket, and at the top of each scanned document's "screen page" is generated a CM/ECF page number. However, that often does not align with the original, paper document's pre-printed page number. For example, doc. 12-5 at 57 bears the original, state-court transcript page 471. For convenience, however, the Court will cite to only the CM/ECF page numbers here.

*State*, 209 Ga. App. 548, 550-551(1), 434 S.E.2d 76 (1993) (Georgia criminal law does not provide for a motion for judgment notwithstanding the verdict).

*Haupt*, 290 Ga. App. at 619 (emphasis added).

Haupt argues that the state appellate court erred because in fact he *did* move for a directed verdict, and both the prosecutor and trial judge treated it as such. Substance, he reminds, always governs over nomenclature. Doc. 1 at 12-17; doc. 2 at 4-16; doc. 13 at 1-3.

This Court partly agrees. "There is no magic in nomenclature, and we judge pleadings, motions and orders not by their name but by their function and substance, being always mindful to construe such documents in a manner compatible with the best interests of justice." *Nelson & Hill, P.A. v. Wood*, 245 Ga. App. 60, 64 (2000), quoted in *Parks v. Hyundai Motor Am., Inc.*, 258 Ga. App. 876, 878 (2002). Hence, a court cannot simply re-label an issue in order to deny relief.

And it is patently unreasonable to read the trial transcript as showing anything but a direct challenge to the sufficiency of the prosecution's case against Haupt. Even the prosecutor referred to Haupt's directed verdict motion in the State's response to Haupt's revised motion for new trial. Doc. 11-16 at 65-66.

But a close reading of the Georgia Court of Appeals' opinion (or "*Haupt* opinion") and the record reveals a subtle distinction that Haupt overlooks. The trial transcript shows that Haupt *in substance* failed to raise the "security" issue, for at no time *during trial* did he argue that what he sold each victim was an investment contract, not a "security" within the meaning of Georgia law. Instead, he at that time focused only on the lack of "false statements" evidence regarding his sale of the restaurant stock shares in question. Doc. 12-5 at 56-71. Haupt made the same omission in his post-trial, extraordinary motion for new trial, doc. 11-17 at 62 (brief), as well as in his initial motion for new trial. Doc. 11-16 at 19; doc. 11-15 at 27.

In fact, it was not until Haupt filed an amendment to his state court motion for new trial that he finally raised the "security" issue. Doc. 11-15 at 59-60 ¶ 2(b); *see also id.* at 61 ¶ 6; *id.* at 62 ¶ 9; *id.* at 65 ¶¶ 17, 20-21; *id.* at 88 ("Defendant's Revised Motion for New Trial with Citation of Authorities Included"), *continuing into* doc. 11-16 at 37 (Seventh Enumeration of Error: "The State failed to prove that the certificates or shares of Crabdaddy's were in fact securities"); doc. 11-18 at 8 ¶ 3 ("Defendant's Supplemental Brief on Motion for New Trial"

arguing that whether "a particular instrument constitutes a security within the meaning of the statute is a question for the Court and not the jury. . . . The ruling on whether the contract was a security was exclusively a matter for the court to determine, not the jury. If the Court was going to submit it to the jury the Court had to submit the proper qualifying instructions"); doc. 11-18 at 18-19 ("As established by the evidence, the investment contract which was delivered to the witnesses provided for the investors to become directors of the corporation. . . . As a result, the 'shares' were not securities as defined by the Georgia Securities Act. . . . The Court also erred in denying Defendant's Motion for a Directed Verdict because the investment contract as established by the evidence was not in fact a security."); doc. 11-18 at 20 (same argument); *compare* doc. 11-15 at 75-81 (post-judgment motion and brief "in arrest of judgment" *not* raising the issue); doc. 11-16 at 87 ("Defendant's Amendment to Extraordinary Motion for New Trial") (also not raising that issue).

The trial judge denied Haupt's post-judgment motions and reached the late-raised "security" issue on the merits. Doc. 11-18 at 38-39. He first noted the test, under Georgia law,

> to determine whether an instrument is a security . . . if (1) 'an investment is a common venture'; (2) 'premised on a reasonable expectation of profits'; (3) 'to be derived from the entrepreneurial or managerial efforts of others.' *Tech Resources, Inc. v. Estate of Hubbard, et. al.*, 246 Ga. 583, 584, 272 S.E.2d 314 (1980).

Doc. 11-18 at 39.  He then acknowledged Haupt's argument that "since the purchasers of stock became directors of the corporation, they were not relying upon the entrepreneurial or managerial efforts of others." *Id.*  The judge also noted the prosecution's response -- that "the investors in this case made their investment with an expectation of profit and no intent to be involved in the day to day operations of the corporation." *Id.*

Finally, he rejected Haupt's argument on the merits:

> The evidence in the case based upon the testimony of the investors was that they relied upon the Defendant for the day to day operations of the corporation.  The Court finds that the State presented evidence of all three elements necessary to prove that the investment was  a security. The Court finds that this claim is without merit.

Doc. 11-18 at 39.  Again, and in contrast, the appellate court simply deemed the issue defaulted:

> Haupt's claim that the investment contracts by which he sold Crabdaddy's stock to his victims were not "securities" under the Act is also waived on appeal because he failed to preserve the issue *by moving for a directed verdict of acquittal thereon. See Rhyne v. State*, 209 Ga.App. 548, 550-551(1), 434 S.E.2d 76 (1993) (Georgia criminal law does not provide for a motion for judgment notwithstanding the verdict).

*Haupt*, 290 Ga. App. at 619 (emphasis added).

And again, Haupt argues here that he *did* file a motion for a directed verdict of acquittal, not a motion for judgment notwithstanding the verdict, so the *Haupt* court fundamentally erred.[4]  This Court agrees that *in name* Haupt timely moved for a directed verdict of acquittal (i.e., he so moved during his trial).  But *in substance* he did not.  And here he simply seeks to exploit the fact that the *Haupt* court sacrificed clarity for the sake of brevity.  In citing *Rhyne*,[5] the *Haupt* court made it clear that,

---

[4]  Normally, "[t]he misapplication of state law is not cognizable in a federal habeas proceeding *unless* petitioner can prove that the error deprived him of a fair proceeding or trial.  *See Mattheson v. King*, 751 F.2d 1432, 1445 (5th Cir. 1985*)."*  *Wentworth v. Morgan*, 2006 WL 3760256 at * 6 (E.D.Ky. Dec. 14, 2006) (unpublished) (emphasis added).  "Only when the ruling is arbitrary and capricious does the misapplication of state law violate due process. . . ."*Russell v. Anderson*, 2008 WL 4534144 at * 6 (N.D.Ohio Oct 6, 2008) (unpublished) (citing *Richmond v. Lewis*, 506 U.S. 40, 50, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992); *Fetterly v. Paskett*, 997 F.2d 1295, 1300 (9th Cir.1993) ("the failure of a state to abide by its own statutory commands may implicate a liberty interest protected by the Fourteenth Amendment against arbitrary deprivation by a state").  So, in very limited circumstances state-law claims can be addressed in federal habeas proceedings.

[5]  In *Rhyne*, two weeks after a mistrial was declared in a criminal prosecution, the defendant "filed a motion for directed verdict notwithstanding mistrial."  209 Ga. App. at 548-49.  "After mistrial, defendant was re-indicted on a three-count indictment charging defendant with malice murder, felony murder and voluntary manslaughter. Defendant filed a plea in bar and motion to dismiss the new indictment. Defendant's motion was denied and he filed an appeal with this court."  *Id.* at 549.  The appellate court thus focused on *when* is the latest point in a prosecution that a criminal defendant can move for a directed verdict, explaining that

OCGA § 17-9-1 permits a defendant to seek a directed verdict of acquittal *only during trial*. By contrast, the Federal Rules of Criminal Procedure permit a

even if Haupt did timely (i.e., during trial) move for a directed verdict, he nevertheless failed to move for it on the "security" ground that he *later* raised in his post-judgment motions. In that sense, then, Haupt moved for a directed verdict on the "security" ground in a *post-judgment* motion, which means he thus filed the functional equivalent of "motion for judgment notwithstanding the verdict" -- something that, as the *Haupt* court explained, is simply not authorized by Georgia law. *See supra* n. 5.

Hence, there is nothing unreasonable about the *Haupt* court's

---

defendant to seek such relief not only after the return of a verdict of guilty (F.R.Cr.P. 29(b)) but also after mistrial (F.R.Cr.P. 29(c)). If the Georgia legislature wishes to create the right to seek post-conviction or post-mistrial judgment of acquittal it may, following the lead of federal statutory law, do so. At this time, however, the law of Georgia provides for neither a motion for judgment of acquittal notwithstanding the verdict nor a motion for judgment of acquittal notwithstanding mistrial.

209 Ga. App. at 551 (emphasis added); *accord Cornette v. State*, 295 Ga. App. 877, 881 n. 9 (2009); *see also* GA. CRIMINAL TRIAL PRACTICE (*Motion for judgment notwithstanding mistrial or verdict*) § 28-9 (2008) ("a motion for acquittal notwithstanding the verdict is treated simply as a motion for new trial.").

Thus, the *Haupt* court cited a case (*Rhyne*) that requires the reader to jump through a few analytical hoops in order to get to the point relevant to Haupt's case: that he could not wait until the post-judgment phase of his case to raise, in substance, the evidentiary insufficiency challenge (that the State failed to prove he sold a "security") -- i.e., that Haupt waived the issue "on appeal because he failed to preserve the issue by moving for a directed verdict of acquittal thereon [during his trial]. *See Rhyne v. State*, 209 Ga. App. 548, 550-551(1), 434 S.E.2d 76 (1993) (Georgia criminal law does not provide for a motion for judgment notwithstanding the verdict)." *Haupt*, 290 Ga. App. at 619.

disposition. Haupt procedurally defaulted his *Jackson v. Virginia* "security" issue by waiting too long, under Georgia law, to raise it.[6] And the last state court to consider the issue specifically invoked procedural default. A habeas petitioner who fails to properly raise his federal claim in state court is procedurally barred from pursuing the same claim in federal court, provided that the state court enforces its procedural rules and refuses to consider the claim on its merits. *Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 907 (11th Cir. 2009). *Owen* reminds that

> [s]uch a procedural bar can occur when the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred in state court. The state law ground must be independent of the federal question and adequate to support the judgment. To be adequate, the state rule must be firmly established and regularly followed. If the last state court rendering a judgment in the case clearly and expressly states that its judgment denying the petitioner's federal claim rests on a state-law procedural bar, then the federal courts must respect the state court's decision, and the claim is barred from

---

[6]    Federal habeas courts otherwise routinely reach evidentiary-sufficiency issues under the *Jackson* standard. *See, e.g., Kamienski v. Hendricks*, 2009 WL 1477235 at *1 (3rd Cir. May 28, 2009) (unpublished) ("The sole question certified to us on appeal from the order denying [§ 2254] habeas relief is whether the evidence was sufficient to prove Kamienski guilty of first degree murder and felony murder beyond a reasonable doubt. Based upon our careful review of the record, and despite the very deferential standard that limits our inquiry, we believe that no reasonable juror could conclude that the evidence admitted against Kamienski at his trial established that he was guilty of murder or felony murder beyond a reasonable doubt, and the New Jersey courts' conclusion to the contrary is an unreasonable application of clearly established Supreme Court precedent."). *See also* doc. 11-18 at 44 (Haupt's trial judge here applied *Jackson* in denying his post-judgment motions).

consideration on federal habeas review.

*Id.* at 908 (quotes, cites, alterations and footnote omitted).[7]

Here Haupt cites the state appellate court's refusal to reach this claim as itself the basis for his federal habeas claim -- that such court

---

[7] As the *Owen* court explained,

> There are, however, two ways in which a federal habeas petitioner can overcome a procedural bar. A procedural bar precludes federal review unless the petitioner demonstrates either (1) an adequate cause for and actual prejudice arising from the default, or (2) that a miscarriage of justice, caused by a substantial denial of constitutional rights, will occur if the petitioner's federal claims are not considered. For purposes of the cause and prejudice method of overcoming a procedural bar, a petitioner shows sufficient cause if he can demonstrate that some 'objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. External impediments sufficient to constitute cause include evidence that could not reasonably have been discovered in time to comply with the rule; interference by state officials that made compliance impossible; *and ineffective assistance of counsel at a stage where the petitioner had a right to counsel.* As to the prejudice requirement, the petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred.

*Id.* at 908 (quotes, cites, alterations and footnote omitted; emphasis added).

Haupt cites no external impediment here, only ineffective assistance. Doc. 16. Yet, he raises that argument in a motion before this Court to amend his petition to allege IAC in conjunction with his post-judgment lawyers' failure to raise a defective-indictment issue before the trial (via post-judgment motion) and appellate (via direct appeal) courts. *Id.* Nevertheless, he limits that claim to the fact that the indictment charged him with making false statements to others while selling them securities. More specifically, the indictment failed to inform him *what* statements were false, and thus, for example, "Petitioner will never know if what he was found by the trial jury that was untrue, or what omission he had made, were the same unknown true statements and unknown omissions that the grand jury had considered in returning the indictment." *Id.* at 4. For that matter, and as is further explained *infra*, Haupt has procedurally defaulted his IAC claims. Thus, he fails to surmount this particular procedural default.

violated his federal due process rights by *misreading* the state court record when it ruled that he had waived review. Doc. 1 at 12-17; doc. 2 at 4-16; doc. 13 at 1-3. However, the *Haupt* court did *not* misread the state court record. In fact, the record supports its procedural default analysis (that under *Rhyne*, Haupt simply waited too long to raise this issue), and Haupt does not argue that this state waiver rule is not firmly established nor regularly followed. (Actually he does, but only in the sense that, again, the state appellate court misread the record, erroneously ruled that he never moved for a directed verdict, and that is not an established practice. Doc. 13 at 14.)

Because the state court found that Haupt procedurally defaulted the federal claim that he wishes to assert here, normally this Court may only review the merits of that claim if he can show cause for the default and prejudice attributable thereto, or demonstrate that this Court's failure to consider the federal claim will result in a fundamental miscarriage of justice. *Owen*, 568 F.3d at 908; *Torres v. Sec'y, Dep't Of Corr.*, 2009 WL 1965295 at * 3 (11th Cir. Jul. 9, 2009) (unpublished). But here again, Haupt contends only that the *Haupt* court fundamentally erred in reading the trial court record by mistakenly finding that he had

failed to raise a defense at trial, when in fact (according to Haupt) he clearly did. As a result of that error, he argues, the appellate court ruled against him when it otherwise would have ruled for him and vacated his conviction outright. Haupt thus is relying upon an *internal* impediment (the state court's supposed fundamental error), not an "external impediment," to support cause for having this Court reach the merits of his claim despite § 2254(d). And, as explained above, there is no error, not even one of state law. Haupt, therefore, has not shown grounds for excusing his procedural default.

In "Ground Two" of his § 2254 petition Haupt complains that he "was denied the right of appeal of the primary issue of [the indictment] counts 8, 9 and 10." Doc. 1 at 18. This claim is merely a derivative of "Ground One," which this Court just rejected, in that Haupt here references his 2002 sale of stock to two of his victims, insists he moved to dismiss all counts against him because the State had failed to prove that "the sales . . . involved securities under [Georgia law]," and thus the *Haupt* court would have vacated his conviction had it not "denied [him] the right to appeal" by erroneously finding that he had waived this issue. *Id.* at 18-19. This Court rejects "Ground Two" for the same reason that

it rejects Ground One; Haupt procedurally defaulted this claim. The Court also rules the same with respect to "Ground Seven," doc. 2 at 40-43, which is the same claim as Ground One only repackaged in a slightly different form.

## B. Defective Jury Instruction

In "Ground Three" Haupt argues that he "did not receive a full, fair and accurate hearing in the Georgia Court of Appeals pertaining to the law of the case." Doc. 1 at 20. Specifically, he takes issue with the appellate court's affirmance of the trial judge's jury instruction defining a security: "The only instruction the trial court gave to the jury" is that "the term security means any stock or share or any other instrument commonly known as a security." *Id.*; doc. 12-6 at 33. The instruction was "blatantly unfair because every share or stock is <u>not</u> a security under the [Georgia] Securities Act" and the definition "disagreed with the State's own expert witness." *Id.* The flawed instruction, he says, "removed from the jury the most essential burden the state had in obtaining a conviction." *Id.* That is, the trial court's mistake violated his "right to a fair trial as guaranteed by the Due Process Clause of the Fourteenth Amendment," and thus the appellate court's affirmance was

in error.[8]  Doc. 2 at 23.

The Georgia Court of Appeals reasoned as follows in denying Haupt's claim:

> The record shows that the trial court charged the jury that the term "security" "meant any stock or share or any other instrument commonly known as a security." The foregoing charge was in consonance with the evidence, which showed that Haupt's victims had purchased shares of Crabdaddy's stock. While Haupt correctly notes that the Act defines the term "security" more broadly than simply a stock or a share, the trial court did not err in sua sponte conforming its definition of a security to the evidence before the jury. *See Hill v. State*, 259 Ga. 557, 558(3)(b), 385 S.E.2d 404 (1989) ("A request to charge must be legal, apt and precisely adjusted to some principle involved in the case and authorized by the evidence.") (citation and punctuation omitted). *Plainly, any failure by the trial court to adjust its jury charge to reflect the law and the evidence would not comport with the foregoing requirement.* It follows that the trial court had no sua sponte duty to charge the full statutory definition of the term "security" as defined in the Act. *Saxon*, supra, 266 Ga.App. at 554(3), 597 S.E.2d 608.

*Haupt*, 290 Ga. App. at 619-20 (emphasis added).  In concluding that the trial judge properly tailored the statutory definition of a security[9] to the

---

[8]  There is a question as to whether Haupt exhausted this claim, since he relied entirely upon state law when presenting it to the Georgia Court of Appeals.  Doc. 1-4 at 4-9.  Respondent, however, does not contest exhaustion in this case, except to the extent that Haupt raises new claims of ineffective assistance of counsel.  Doc. 7 at 5.

[9]  Georgia law defines a "security" as meaning

any note, stock, treasury stock, bond, debenture, evidence of indebtedness,

evidence presented at trial, the Georgia Court of Appeals simply glosses over the glaring deficiencies in the instruction. After all, the definition, as presented, was circular and provided the jury with little meaningful guidance as to the essential nature of a "security."

The Due Process Clause commands all courts to instruct the jury on the essential elements of a crime. *See United States* v. *Gaudin*, 515 U.S. 506, 522-23 (1995) ("The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged."); 2A Fed. Jury Prac. & Instr. § 50.03 (5th ed. 2009) (In light of *Gaudin*, "the trial court

---

certificate of indebtedness, investment certificate, certificate of interest or participation in any profit-sharing agreement, certificate of interest in oil, gas, or other mineral rights, collateral trust certificates, preorganization certificate or subscription, transferable share, investment contract, viatical investment, voting-trust certificate, limited partnership interest, or beneficial interest in profits or earnings, *or any other instrument commonly known as a security*. . . .

O.C.G.A. § 10-5-2(a)(26) (emphasis added). It excepts certain "investment contracts," however, and Haupt argues he should fall under that exception. Moreover, he points to a more precise definition established in case law, noted above:

to determine whether an instrument is a security . . . if (1) 'an investment is a common venture'; (2) 'premised on a reasonable expectation of profits'; (3) 'to be derived from the entrepreneurial or managerial efforts of others.' *Tech Resources, Inc. v. Estate of Hubbard, et. al.*, 246 Ga. 583, 584, 272 S.E.2d 314 (1980).

Doc. 11-18 at 39. He contends that it was error for the trial court to simply offer the rather circular definition that a security means "any stock or share or other instrument commonly known as a security." Doc. 12-6 at 33.

should submit all elements of the offense to the jury. *See also Johnson v. United States*, 520 U.S. 461, 117 S. Ct. 1544, 137 L.Ed.2d 718 (1997).”); 23A C.J.S. Criminal Law § 1784 (June 2009) (“Jury instructions must accurately and adequately define and explain the offense charged and all of its constituent and essential elements, either in the language of the statute or in the court's appropriate language, to enable the jury to apply that law to the facts.”) (footnotes omitted).

But even assuming that the instruction was error, that does not end the inquiry. Instructional errors that misdescribe an element of the charged crime are generally considered to be trial errors as opposed to more serious “‘structural defects in the constitution of the trial mechanism.’” *California v. Roy*, 519 U.S. 2, 5 (1996) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993)); *see Neder v. United States*, 527 U.S. 1, 8 (1999) (plurality) (identifying several “structural” errors, including the complete denial of counsel, biased trial judge, racial discrimination in selection of grand jury, denial of self-representation, denial of public trial, and defective reasonable doubt instructions). Trial errors of the type Haupt alleges merit review under the harmless error standard announced in *Kotteakos v. United States*, 328 U.S. 750 (1946).

*Id.* That is, the Court must determine whether the error "had a substantial injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. 619 at 623 (citing comity, federalism, and the state's interest in the finality of convictions, the Court held that the appropriate test for determining on collateral attack the harmfulness of a non-structural constitutional error is to evaluate whether the error had a "substantial and injurious effect or influence in determining the jury's verdict"); *see Lopez v. Crosby*, 2006 WL 354428 at *13 (M.D. Fla. Feb. 15, 2006).

Here, the trial transcript clearly reveals that Haupt never disputed the issue at trial. Indeed, during his closing arguments, he essentially concedes the point as to at least some of his defrauded investors:

> Now, please understand something that the State totally ignores, is that I created a little corporation. It authorized 1,000 shares of stock. My purpose was to get four or five people to capitalize it *and be investors only*. Now, by that I mean, if you were — if you bought Coca-Cola stock, you're an investor. They had no restaurant experience. They were the people that was going to capitalize it and they would be rewarded for it.

Doc. 12-5 at 517 (emphasis added). His explanation directly tracks the definition of a security: (1) an investment that is a common venture; (2) premised on a reasonable expectation of profits; (3) to be derived from

the entrepreneurial or managerial efforts of others. *Tech Resources, Inc. v. Estate of Hubbard*, 246 Ga. 583, 584 (1980). Moreover, the state's securities law expert explained to the jury that an instrument is a security if "there is a common expectation of profit, an investment of money, in a common enterprise, and the essential managerial efforts are done by somebody else other than yourself." Doc. 12-2 at 133.

Since the term had been adequately described and Haupt essentially admitted that he had sold instruments which met the definition, it is clear that this trial error did not have a substantially injurious effect or influence in determining the jury's verdict.[10] *See Waddington v. Sarausad*, 129 S. Ct. 823 (2009) (a habeas petitioner challenging a jury instruction that quotes a state statute as unconstitutionally "ambiguous" must show *both* that the instruction was ambiguous *and* that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the state of its burden of proving every essential element of the crime beyond a reasonable doubt;

---

[10] While a trial court commits plain error when it neglects to instruct the jury on all of the elements of the offense, *Screws v. United States*, 325 U.S. 91, 107 (1945), the Eleventh Circuit has noted that when it is clear that an element was not in dispute and the trial record establishes that the element was met, no prejudice results from the failure to remove the undisputed element from the jury. *United States v. Hensel*, 711 F.2d 1000, 1005 (11th Cir. 1983).

the instruction may not be judged in isolation but must be considered in the context of the entire trial record; and the state court's resolution of the issue must be viewed "through the deferential lens of AEDPA"). Consequently, this claim is without merit.

## C. Venue

Before the appellate court Haupt contended that his convictions as to Counts 1 and 2 (making an untrue material statement of fact and omitting other material facts in selling Crabdaddy's stock to Thompson), must be reversed because the State failed to prove venue in Chatham County. He also challenged his conviction as to Count 6 (omitting material facts in selling Crabdaddy's stock to Hodges) for no proof of venue in Chatham County. Rejecting this claim, the *Haupt* court noted that venue for any civil or criminal action is established by showing any act in any county where the act furthered the transaction that violated the Georgia Securities Act of 1973. *Haupt*, 290 Ga. App. at 621.

The State met its burden, that court concluded: "Thompson testified that her conversations with Haupt, as set out above, occurred at Bell's Restaurant in Chatham County. Hodges testified that Haupt sought his investment in Crabdaddy's "within the Chatham County

area." *Id*. Hence, that State met its burden as to Counts 1 and 2.

It also met its burden on Count 6, the *Haupt* court ruled. While the evidence "was not unequivocal, i.e., Hodges' testimony indicating that the offense occurred 'within the Chatham County area,' the evidence otherwise showed that he executed his stock purchase agreement in the 'State of Georgia; County of Chatham.' Because the evidence thus shows an act in Chatham County in furtherance of the commission of Count 6, venue as to it was also proved beyond a reasonable doubt. OCGA § 10-5-15." *Id*.

Haupt insists that that there is no evidence supporting Thompson's testimony and, hence, he challenges only *that* venue count. Doc. 2 at 25. While he concedes that he spoke with Thompson "at Bell's restaurant in Chatham County," the record, he insists, "is void of any conversation between [Haupt] and Thompson concerning the transaction as having taken place in Chatham County, Georgia. The only testimony regarding Chatham County was that Thompson met Petitioner at Bell's for the purpose of obtaining employment as a hostess. . . . There was no testimony that indicated that the Crabdaddy's investment was in any way discussed during that conversation, and there was no date given as

to when the employment conversation took place." *Id.* at 25-26. He thus contends that the *Haupt* court committed § 2254(e) error redressable by this Court. *Id.* at 26.

Assuming *arguendo* that this claim is even cognizable under § 2254, this Court rejects Haupt's argument. The trial transcript shows that Thompson met Haupt at "Bells Restaurant here in Savannah [which is in Chatham County, Georgia]." Doc. 12-3 at 35. Thompson recounted a lengthy conversation with Haupt that extended from her troubles stemming from a vehicle crash to her lack of income. *Id.* at 35-39. "Eventually," she further testified, "he presented a prospectus or the idea of a Crabdaddy's restaurant, and said that would supplement my income. And he said -- basically, it boiled down to that of each Crabdaddy's restaurant that was in place, that I would draw in the neighborhood of a little bit over $400 a month." *Id.* at 39-40.

Q. He was asking you to invest in --

A. Yes.

Q. -- his Crabdaddy's corporation?

A. Yes, he did.

*Id.* at 40. That evidence easily supports the venue showing that the

State was required to make here.  Thus, this claim is also without merit.

## D.  Reverend Warren Cribb

On direct appeal Haupt complained that the trial court erred in excluding the testimony of Reverend Warren Cribb.  *Haupt*, 290 Ga. App. at 622.  At trial, says Haupt, he proffered Cribb *not* as a character witness, but to negate intent (i.e., no intent to deceive investors about his past) and thus through Cribb show that Haupt

> had been publicly open and forthright about his past convictions and disbarment by writing and publishing a book; speaking at church services; founding seven ministries, conducting a weekly television program centered around his past convictions known as "The Truth Will Set You Free"; and that his "past experiences [including his convictions and disbarment] were widely publicized in the newspapers around the time in question.  This testimony was evidence that [Haupt's] lifestyle was not about hiding or misrepresenting his past.

Doc. 2 at 28.  The trial judge excluded Cribb's testimony.  As the *Haupt* court recounted:

> Here, at an out-of-court hearing, Haupt proffered that Cribb would testify that since his release from prison, Haupt had freely admitted his past to members of the Savannah community. Reverend Cribb *had no personal knowledge*, however, as to whether Haupt had revealed his prior bad acts to his victims. Because Reverend Cribb's testimony was plainly tenuous if not speculative as to the relevant issues in this case, we find no manifest abuse of discretion in the trial court's exclusion of such testimony.

290 Ga. App. at 623 (emphasis added).

Before this Court Haupt talks around the fact that Cribb *had no personal knowledge* about what Haupt represented to his victims. Instead, he relies on easily distinguishable cases that in one way or another stand for the straightforward principle that defendants should not be denied an opportunity to present personal-knowledge (hence, competent) evidence negating intent.[11]   Doc. 2 at 27-32.

Nevertheless, Haupt does have a point.  Cribb could have testified that Haupt very publicly (via books, the pulpit, and on television) informed the area public of his checkered past, as Cribb apparently *did* have personal direct knowledge of those facts.  But that merely placed the decision whether or not to admit Cribb's testimony as sufficiently probative within the trial judge's discretion, which means that at most Haupt can show here that the trial judge abused his discretion -- a simple

---

[11]  As one of  Haupt's cited cases reminds:

"The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 653, 98 L.Ed.2d 798 (1988). Relevant evidence may, for example, be excluded on account of a defendant's failure to comply with procedural requirements. *See Michigan v. Lucas*, 500 U.S. 145, 151, 111 S.Ct. 1743, 1747, 114 L.Ed.2d 205 (1991). And any number of familiar and unquestionably constitutional evidentiary rules also authorize the exclusion of relevant evidence.

*Montana v. Egelhoff*, 518 U.S. 37, 42 (1996); *see also McCullock v. Woodford*, 2009 WL 2059432 at * 29 (C.D.Cal. July 14, 2009) (unpublished) (collecting cases).

error of state law, but not one so fundamental so as to deprive Haupt of his federal due process rights. *See supra* n. 5. Haupt therefore has not shown § 2254-redressable error here.

### E. Maria A. Rodriguez

In Ground Six Haupt complains that he "did not receive a fair hearing in the Georgia Court of Appeals as to Count Nine of the indictment." Doc. 2 at 33. Before that court Haupt contended that the evidence supporting his conviction for making an untrue statement of material fact in connection with his sale of securities to Rodriguez was insufficient because the State offered no evidence showing that any statement he made to her was untrue. Rejecting this claim, the *Haupt* court cited Rodriguez's testimony

> that Haupt told her that she would be able to purchase Crabdaddy's stock after the company repurchased stock previously sold to other investors. Rodriguez otherwise testified that Haupt told her that such stock had become available at the time of her purchase. Haupt admitted, however, that at the time Rodriguez purchased the shares offered to her, the repurchase of stock had not yet been completed. Because the evidence showed that Haupt's representations as to the availability of stock for purchase were untrue when made, the instant claim of error is without merit.

*Haupt*, 290 Ga. App. at 624.

But "[t]here was no such testimony or evidence," Haupt now

contends, "that supported such a finding of fact." Doc. 2 at 33. He cites to page 12-5 at 20 of the trial transcript to support his contention. Doc. 2 at 33. There Rodriguez testified that she merely "*assumed* that the other [stockholders] were out [of the Crabdaddy corporation] and that's why stock was available [for Rodriguez to purchase]." Doc. 12-5 at 20. This evidence at most shows, Haupt contends, that he told her no untruth, and "that when stock was available she would be able to purchase [it]." Doc. 2 at 34.

However, testimony just a few pages later supports the *Haupt* court's analysis:

> Q. Okay, were you under the impression that you had -- that they were -- they'd [i.e., the other Crabdaddy investors] been bought out or something? What were you -- what was your impression?
>
> A. My impression, that there was some problem with them in how the restaurant was being handled and they all wanted out and so when they wanted out, that *opened positions for us* and I understood that there were only five of us that were now owners of the restaurant.
>
> Q. Okay. So did Mr. Haupt lead you to believe this?
>
> A. Yes.

Doc. 12-5 at 22 (emphasis added). That is sufficient to support the *Haupt* court's conclusion "that Haupt told her that such stock *had* become

available at the time of her purchase." *Haupt*, 290 Ga.App. at 624 (emphasis added). True, the testimony could be construed in Haupt's favor (i.e., that he told her no untruth when he said to her "that *when* stock was available she would be able to purchase [it]," doc. 2 at 34 (emphasis added), but it also, fairly read, can be held to support the jury's interpretation "that Haupt told her that such stock *had* become available at the time of her purchase." *Haupt*, 290 Ga. App. at 624) (emphasis added). Hence, Haupt has not even shown mere legal error by the *Haupt* court much less § 2254-redressable error due to an unreasonable application of federal law on this claim.[12]

### G. Motion to Amend

On direct appeal Haupt contended that "the trial court erred in denying his motion for new trial, arguing that (i) the indictment was defective because it was vague and ambiguous for failure to set out the specific misrepresentations or omissions alleged as in violation of the Act, and (ii) the investment contracts by which he sold shares in Crabdaddy's

---

[12] Haupt also argues that the State failed to show scienter because he had, at the time, also given Rodriguez a written purchase agreement that disclosed that "'other stockholders' still owned their stock." Doc. 2 at 39. "So, how was she misled?" *Id.* This of course goes to the weight of the evidence (hence, something for the jury to consider and reject as not credible), and thus does not otherwise demonstrate the complete absence of evidence necessary to support a due-process level claim before this Court.

were not securities within the meaning of the Act." *Haupt*, 290 Ga. App. at 619. But "Haupt's failure to challenge the indictment below by a timely filed motion in arrest of judgment, result[ed] in waiver on appeal." *Id.*

Before this Court Haupt now moves, unopposed, for leave to amend his § 2254 petition so that he can attack that indictment as constitutionally defective. Doc. 15. He concedes that he procedurally defaulted this claim and thus wishes to litigate an IAC claim against his post-judgment counsel[13] to surmount such default. *Id.* at 5 ¶ 18. And, he asks this Court "to apply the exception to the doctrine of procedural default and exhaustion under the well recognized principle of 'fundamental miscarriage of justice.' To-wit: a constitutional claim that implicates fundamental fairness . . . compels review regardless of possible defaults.' *Murray v. Carrier*, 477 U.S. 478, 496 (1986)." *Id.* at 6 ¶ 19.

A couple of principles must be applied here. Ordinarily, "when a petitioner has failed to exhaust state remedies, the district court should dismiss the petition without prejudice to allow exhaustion. *Rose v.*

---

[13] Haupt represented himself at trial, with the help of stand-by counsel, but then was represented during his post-judgment phase.

*Lundy*, 455 U.S. 509, 519-20, 102 S.Ct. 1198, 1203-04, 71 L.Ed.2d 379 (1982)." *Reedman v. Thomas*, 305 F. App'x 544, 546 (11th Cir. 2008). But a petitioner "can always amend the petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims." *Rose*, 455 U.S. at 520.

Here the petitioner *never presented* this claim to a state habeas court -- indeed, he never filed a state habeas petition at all -- and now *affirmatively* seeks to bypass exhaustion of his defective indictment claim by invoking *Murray's* "miscarriage of justice" exception. Doc. 15 at 6 ("It would be futile and extremely harmful to require Petitioner to remain in prison for another two years proceeding through the state post-conviction system challenging an indictment that is clearly defective and will ultimately and finally be dismissed.").

Exhaustion, for that matter would be futile and thus would not be required at this juncture in any event. IAC claims, it must be remembered, are interwoven with procedural default. So an IAC claim, if not itself procedurally defaulted, may constitute cause to excuse procedural default. *Mize v. Hall*, 532 F.3d 1184, 1192 n. 5 (11th Cir. 2008). Conversely, if the IAC itself is defaulted, then it cannot serve to

overcome procedural default of other claims. *Id.* Put another way, IAC "adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). And a federal habeas court is barred from considering IAC as cause for procedural default of another claim if the IAC claim *itself* was procedurally defaulted, unless the movant can show cause and prejudice concerning the default with respect to the IAC claim itself. *Id*. at 452-53; *Henderson v*. Campbell, 353 F.3d 880 (11th Cir. 2003); FEDERAL HABEAS MANUAL § 9B:67 (*Exhaustion of ineffectiveness claim constituting the basis for "cause"*) (June 2009).

Here Haupt raised an IAC claim within his post-judgment motions before the trial court. Doc. 11-18 at 35 ("Defendant alleges that he was denied [IAC]when his [post-judgment] counsel failed to file appropriate motions within the time prescribed by law"). As for the very basis supporting the *Haupt* court's ruling that Haupt waived his defective-indictment claim because he failed to timely move "in arrest of judgment," the trial court noted: "Defendant additionally argued at the motions hearing (although this is not argued in his brief) that his retained counsel was ineffective in that he failed to file the Motion in

Arrest of judgment within the time prescribed by law." *Id.* at 36. Applying *Strickland v. Washington*, 466 U.S. 668 (1984), the trial judge ruled that Haupt could show no *Strickland* prejudice. *Id.* at 36-37.

Haupt then failed to appeal that IAC ruling (the *Haupt* opinion mentions no IAC claim and Haupt does not claim that he raised it there, much less challenge any such ruling here). Thus, if he presented that IAC claim now to a state habeas court he would be deemed to have procedurally defaulted it by failing to raise it on direct appeal of the trial court's post-judgment motion rulings. O.C.G.A. § 9-14-48(d); *Black v. Hardin*, 255 Ga. 239, 336 S.E.2d 754 (1985). Therefore, it would be futile for this Court to constrain Haupt to exhaust this particular claim. *See Owen*, 568 F.3d at 908 (a procedural default can also arise when the habeas petitioner fails to raise the federal claim in state court and it is clear from state law that any future attempts at exhaustion would be futile).

Moreover, because he does not challenge the trial court's ruling on the very IAC claim that he now seeks to invoke to support his amendment motion here, he is bound by it. Nor does he cite any cause and prejudice to "un-default" the IAC claim that he now seeks to raise in

his motion to amend before this Court. And whatever may be the ultimate reach of *Murray's* "fundamental miscarriage of justice" exception, *see, e.g., Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Claritt v. Kemp*, 2009 WL 1885754 at * 1 (11th Cir. July 2, 2009) (unpublished) (applying that exception to an actual innocence claim), it most surely cannot encompass the procedural default/state-remedy bypass layers reflected in the record here based upon Haupt's mere speculation that he would not receive justice in the state court system. Therefore, the Court denies his motion to amend. Doc. 15.

## IV. CONCLUSION

Accordingly, the Court should **DENY** Reginald C. Haupt's 28 U.S.C. § 2254 petition, and his motion to amend is **DENIED**. Doc. 15.

**SO REPORTED AND RECOMMENDED** this  15th  day of September, 2009.

/s/ G.R. SMITH
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**